**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH MAAS, *et al.*, | : | |
| *Plaintiffs*, | : | Case No. 1:23-cv-00076-JPH |
| | : | |
| v. | : | Judge Jeffery P. Hopkins |
| | : | |
| JTM PROVISIONS COMPANY INC., *et al.*, | : | |
| *Defendants*. | : | |

**ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND
AMENDED COMPLAINT (Doc. 57) AND ON NON-PARTY RSM US LLP'S
MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER (Doc. 55)**

These consolidated matters are before the Court for consideration of Plaintiffs Joseph Maas ("Joe Maas") and LCNB National Bank's (collectively, the "Plaintiffs") Motion for Leave to File a Second Amended Complaint ("Motion for Leave") (Doc. 57), and Non-Party RSM US LLP's ("RSM") Motion to Quash Subpoena and for Protective Order ("Motion to Quash"). Doc. 55.

For the reasons stated herein, Plaintiffs' Motion for Leave is **DENIED**. RSM's Motion to Quash is **GRANTED IN PART** and **DENIED IN PART**. RSM's Motion is **GRANTED** as it relates to the quashing the Subpoena, but its request for a protective order is **DENIED** for lack of adequate briefing on the matter.

# I.     MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

## A.  BACKGROUND

On January 2, 2025, nearly two weeks before the January 15, 2025 deadline for discovery, which has already been thrice extended,[1] Plaintiffs filed the instant Motion for Leave to File a Second Amended Complaint. Doc. 57. Plaintiffs submit that the proposed Second Amended Complaint "includes several additional facts relating to Defendants' imposition of their religious beliefs" on Joe Maas and alleges "two additional counts [for breach of fiduciary duty] against Anthony ("Tony") Maas and Jerome ("Jerry") Maas under Fed. R. Civ. P. 23.1." *Id.* at PageID 1241.

Defendants filed their response in opposition to Plaintiffs' Motion for Leave on February 11, 2025. Doc. 64. Defendants argue that Plaintiffs' proposed amendments are "futile" and constitute an undue delay by being brought "less than two weeks before the discovery deadline." *Id.* at PageID 1892. Defendants posit that "[t]he proposed [Second Amended Complaint] contains all the same claims and allegations that are subject to the Maas Defendants' partial motion to dismiss," and also improperly "asserts two additional derivative claims for breach of fiduciary duty" based on JTM Provision Company, Inc.'s ("JTM") "charitable donations to a particular charity." *Id.* at PageID 1893.

## B.  LEGAL STANDARD

The grant or denial of a motion to amend under Fed. R. Civ. P. 15(a) is within the discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous

---

[1] *See* Docs. 41, 49, and 52.

amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

An amendment is futile "if the claim, even with the amendment, could not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss." *Green v. Mason*, 504 F. Supp. 3d 813, 826 (S.D. Ohio 2020) (cleaned up); *see also Fisher v. Roberts*, 125 F.3d 974, 978 (6th Cir. 1997). To survive a Rule 12(b)(6) motion, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As to what constitutes "undue delay" and "undue prejudice," the Sixth Circuit has provided factors to guide in this Court's consideration. Those factors include the "length of the delay, whether dispositive motions have been granted, whether the new allegations would require the opponent to expend significant additional resources to conduct discovery and prepare for trial, and whether the new allegations would significantly delay resolution of the dispute." *Brown v. Fla. Coastal Partners*, No. 2:13-cv-1225, 2015 WL 4205157, at *6 (S.D. Ohio July 10, 2015) (citing *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994)). "[A] party who delays in seeking an amendment" once the need to amend becomes apparent "is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459 (6th Cir. 2013), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019) (citing 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1488, p. 764 (3d ed. 2010)) (cleaned up).

## C.  ANALYSIS AND DISPOSITION

Applying the relevant factors in the present case, the Court holds that Plaintiff should not be granted leave to file a second amended complaint.

*First*, the proposed amendments would be futile because they "could not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss." *Green v. Mason*, 504 F. Supp. 3d 813, 826 (S.D. Ohio 2020) (cleaned up). As an initial matter, the additional claims Plaintiffs seek to add would likely be barred by the statute of limitations or by res judicata and collateral estoppel. Plaintiffs' proposed Second Amended Complaint adds two additional counts, Counts Fourteen and Fifteen, which are derivative actions brought against Tony and Jerry Maas for breach of the fiduciary duties of good faith, loyalty, and to refrain from self-dealing. These counts allege claims that date back to 2007.

Plaintiffs ultimately allege that:

> *Between 2007 through 2024*, JTM, at the direction of Tony Maas, has given millions of dollars to an entity called Ruah Woods . . . . Their actions have damaged Joe, The Trusts, and JTM by siphoning cash assets from JTM that otherwise should have been distributed to Joe and The Trusts, or used by JTM to pay down other corporate obligations.

Doc. 57-1, PageID 1297, 1300 (emphasis added). But in their Motion for Leave, Plaintiffs make no effort to demonstrate that such claims would not be barred by the statute of limitations or by the doctrines of res judicata and collateral estoppel. Indeed, the proposed amendments object to "payments from JTM [to Ruah Woods], disguised as charitable contributions," Doc. 57-1, PageID 1298, 1304, even though charitable contributions and breach of fiduciary duties were the same subjects of the previous state court action. *See Maas v. Maas*, 2020-Ohio-5160, ¶¶ 39, 43. Plaintiffs do not explain why they were otherwise unable to assert these claims in any of their previous lawsuits alleging breaches of fiduciary duty

against the Maas Defendants. *Compare* Doc. 57-1, PageID 1300 ("Their actions are a violation of their duties of good faith and loyalty, and their duty to refrain from self-dealing."); *and Maas*, 2020-Ohio-5160, at ¶ 44 ("Joe contends that Tony engaged in numerous instances of self-dealing and mismanagement."). In fact, much of Plaintiffs' memorandum in support of their Motion for Leave is dedicated to reciting many of the same statements that were previously alleged in Count Eight of the First Amended Complaint.[2]

The proposed amendments are also futile because Plaintiffs have failed to plead the requisite elements for a claim for breach of fiduciary duty. The elements of a breach of fiduciary duty claim include (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. *Harwood v. Pappas & Assoc., Inc.*, 2005-Ohio-2442, at ¶ 26 (8th Dist.). Importantly, the Sixth Circuit has emphasized that "Ohio law requires proof of damages to the corporation before a shareholder's derivative action can be maintained." *Brown v. Ferro Corp.*, 763 F.2d 798, 802–

---

[2] *Compare* Am. Compl., Doc. 29, PageID 625:

> The amount of JTM funds, including Joe's and The Trusts' hijacked distributions, are given as a charitable donation to Ruah Woods and personally benefit Tony and Jerry. That entity owns the real estate where Ruah Woods is physically located. Over the course of the last several years, the funds pilfered by Tony and used by him to pay Ruah Woods expenses, have also been used to pay the real estate taxes for Pentecost. While Tony and Jerry have been members of Pentecost, the value of the real estate has increased by hundreds of thousands of dollars, thereby increasing their personal net worth. The increase in the value of the Pentecost real estate occurred in part from Tony's use of funds pilfered from Joe and The Trusts.

*with* Pls.' Mem. in Supp. of Mot. for Leave, Doc. 57, PageID 1242:

> Throughout the years, Tony and Jerry have funneled millions of dollars of JTM assets – mostly in cash – to a non-profit entity called Ruah Woods. Tony is the CEO of Ruah Woods. Ruah Woods' physical plant sits on the property owned by Pentecost. Their donations of JTM assets to Ruah Woods has significantly increased the value of the real estate owned by Tony and Jerry upon which Ruah Woods sits. Yet, neither Tony nor Jerry have disclosed to the JTM Board or the other shareholders the conflict of interest that exists in directing millions of dollars of JTM cash to the property where Pentecost is located.

03 (6th Cir. 1985) (citing *Barsan v. Pioneer Savings and Loan Co.*, 163 Ohio St. 424, 127 N.E.2d 614 (1955)).

Here, Plaintiffs claim that payments to Ruah Woods "directly damaged [Joe Maas] and the Trusts." Doc. 57-1, PageID 1299. But Plaintiffs' position that Tony and Jerry's "siphoning [of] cash assets from JTM that otherwise should have been distributed to Joe and The Trusts, or used by JTM to pay down other corporate obligations . . . damaged Joe, The Trusts, and JTM" is conclusory and fails as a matter of law. *Id.* at PageID 1300. Despite being required to, Plaintiffs do not provide *proof* that they or JTM were actually *damaged* by Defendants' alleged breach of fiduciary duties. Rather, the extent of their professed injury is a proclamation that they were "damaged"—a claim that is "nominal at best," *Brown*, 763 F.2d at 802, and is as legally effective as Michael Scott yelling "I declare bankruptcy!"[3]

*Second*, "granting [P]laintiff[s] leave to amend the complaint at this late stage of the proceedings would unduly prejudice [D]efendants." *Brautigam v. Damon*, No. 1:11-cv-551, 2015 WL 11018199, at *5 (S.D. Ohio Nov. 17, 2015). This case has been pending in federal court since February 10, 2023. Doc. 1. But the underlying dispute has been in near-constant litigation since Joe Maas filed his first complaint against Defendants in state court on November 9, 2017. *Maas*, 2020-Ohio-5160, at ¶ 8. As Defendants maintain, Plaintiffs' proposed Second Amended Complaint "would be the *eighth* complaint that Plaintiff Joe Maas has brought against the Maas Defendants over the last eight years, in three different lawsuits to complain about JTM's charitable giving practices." Doc. 64, PageID 1892. To permit Plaintiffs to file the Second Amended Complaint, particularly when there are motions to dismiss the First Amended Complaint, (Docs. 31, 32), would only serve to reward Plaintiffs'

---

[3] *See The Office: Episode 4.4 "Money"* NBC television broadcast Oct. 18, 2007.

strategy of compensating for the weaknesses of their claims by seeking to delay the disposition of them.

Adding to the prejudice to Defendants that would result from amendment is the fact that discovery has closed. Doc. 55. To reopen discovery *again* would cause Maas Defendants "to incur further expense and delay disposition of the matter." *Id.* at PageID 1901; *see also Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994) ("In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute . . . .").

*Third*, Plaintiffs waited until almost two weeks before the discovery deadline to move to file a Second Amended Complaint, "based largely on facts known to [Plaintiffs] from the beginning of litigation." *Kesterson v. Kent State Univ.*, No. 5:16-cv-298, 2018 WL 2129610, at *8 (N.D. Ohio May 8, 2018). This separately "compels denial of the motion under Rule 15(a) for undue delay." *Id.*

Accordingly, and for the reasons stated above, Plaintiffs' Motion for Leave is **DENIED**.

## II.     MOTION TO QUASH SUBPOENA AND PROTECTIVE ORDER

### A. BACKGROUND

RSM provides tax and consulting services to its clients from nearly 100 offices in North America. Doc. 55, PageID 1210. RSM's tax clients include several Defendants in this action, and it also provides services to non-parties, including Pentecost Properties LLC and Maas Family Foundation. *Id.*

This is not the first rodeo between RSM and Plaintiffs. When Joe Maas was engaged in multi-year litigation with Defendants in the Court of Common Pleas of Hamilton County, Ohio, in a case captioned *Joseph Maas v. JTM Provisions Co. Inc., et al.*, Case No. A2100951, RSM previously produced "132 documents totaling nearly 1,100 pages" upon Plaintiffs' reasonable discovery requests. Doc. 55, PageID 1211.

Several years later, on February 5, 2024 and in relation to the present case, Plaintiff Joe Maas issued a subpoena to RSM requesting numerous documents in RSM's possession regarding, in part, the Maas Family Foundation, Tony Maas, John ("Jack") Maas, Jerry Maas, and Pentecost Properties, LLC. Doc. 58, PageID 1758. After a few weeks of correspondence between counsel, RSM responded on March 6, 2024 and definitively asserted that it would not produce the requested documents, citing its obligations under 26 U.S.C. § 7216 and disputing the relevance of the information sought. Doc. 55, PageID 1211.

On December 9, 2024, in events leading up to the instant Motion to Quash, Plaintiffs issued another subpoena to RSM (the "Subpoena"). *Id*. The Subpoena directed RSM to appear for a deposition on January 10, 2025 (the "Deposition") [4] and to produce some of the same trove of documents previously requested and objected to by RSM. Plaintiffs requested information relating to the 2020–2023 federal tax returns of Pentecost Properties LLC, Ruah Woods, and the Maas Family Foundation; the method of calculation of the in-kind charitable contributions listed in the tax returns during the same timeframe; an explanation of how charitable contributions affect K-1 calculations for JTM shareholders; a list of charitable contributions from JTM to various third parties during the same timeframe; and JTM

---

[4] The Deposition did not occur on January 10, as that date was acknowledged by both Plaintiffs and RSM as a "placeholder for the subpoena." Doc. 58, PageID 1762; Doc. 59, PageID 1846.

shareholder status for certain members of the Maas family.[5] Doc. 50-1, PageID 1198; Doc. 58, PageID 1764. Counsel for RSM replied on December 19, 2024 and again objected to Plaintiffs' request for such information. Doc. 55, PageID 1212. RSM now requests that this Court quash the Subpoena issued to RSM and to grant a protective order in favor of RSM. *Id.* at PageID 1209. The Motion to Quash is fully briefed and ripe for adjudication.

## B. LEGAL STANDARD

### i. Subpoena

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas. Rule 45 permits parties in legal proceedings to "command" a non-party to attend a deposition or produce documents. Fed. R. Civ. P. 45(a)(1). Upon a timely motion to quash the subpoena, a court "must quash or modify a subpoena" that, among other provisions, "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Whether a subpoena imposes an "undue burden" ultimately depends on the facts before the court and "turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the

---

[5] A verbatim accounting of the topics identified by Plaintiffs for which they seek a RSM representative to testify is as follows:

1. Information contained in the 2021 through 2023 JTM tax returns;
2. The method of calculation of the in-kind charitable contributions listed in the 2021 through 2023 JTM tax returns;
3. An explanation of how the charitable contributions by JTM to various third parties affects the K-1 calculations for the JTM shareholders;
4. Information contained in the 2020 through 2023 Pentecost Properties LLC tax returns;
5. Information contained in the 2020 through 2023 Ruah Woods tax returns;
6. The list of charitable contributions from JTM to various third parties for the years 2021 through 2024;
7. Information contained in the Maas Family Foundation tax returns for the years 2020 through 2023;
8. The JTM shareholder status for Tony, Joe, Jack, and Jerry and their family trusts as it relates to the JTM tax returns for the years 2021 through 2023.

Doc. 58, PageID 1764.

burden imposed." *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (citation omitted). Nonetheless, "[i]f any documents sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing." *F.T.C. v. Trudeau*, No. 5:12-mc-35, 2012 WL 5463829, at *2 (N.D. Ohio Nov. 8, 2012) (citation omitted).

Courts in the Sixth Circuit "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26."[6] *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citation omitted). As such, a court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Cleveland Clinic Health Sys.-E. Region v. Innovative Placements, Inc.*, No. 1:11-cv-2074, 2012 WL 187979, at *2 (N.D. Ohio Jan. 23, 2012) (citing Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii)). In addition, "'the status of a person as a non-party is a factor that weighs against disclosure.'" *Vietnam Veterans of America v. C.I.A.*, No. 2:11-mc-16, 2011 WL 4714000, at *5 (S.D. Ohio 2011) (quoting

---

[6] Rule 26 provides, in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

*American Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (additional citations omitted). "The Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request." *Bricker v. R & A Pizza, Inc.*, No. 2:10-cv-278, 2011 WL 1990558, at *2 (S.D. Ohio May 23, 2011).

### ii.    Protective Order

The decision to grant or deny a motion for protective order "falls within the broad discretion of the district court managing the case." *Century Prod., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988). Under Federal Rule of Civil Procedure 26, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). The burden of establishing good cause for a protective order rests with the movant. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)). "To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix*, 11 F. App'x at 500 (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C.1987)) (citations omitted). Particularly in the business context, that showing requires "specific demonstrations of fact, supported where possible by affidavits and concrete examples . . . ." *Deford v. Schmid Prod. Co.,* 120 F.R.D. 648, 653 (D. Md. 1987), *accord Tinman v. Blue Cross & Blue Shield of Mich.,* 176 F.Supp.2d 743, 745–46 (E.D. Mich. 2001). Mere speculation or unsubstantiated fears of prejudice are insufficient to justify the

imposition of a protective order. *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550–551 (6th Cir. 2004).

## C. ANALYSIS AND DISPOSITION

Resolution of the request to quash the Subpoena and the request for a protective order turn on similar but nonetheless separate considerations. *First*, the Court must assess whether the Subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The Court finds that both inquiries are answered in the affirmative. Thus, quashing the Subpoena is warranted.

*Second*, the Court must determine whether RSM has established "good cause" so as to grant a protective order. As discussed above, "[g]ood cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *Smith v. FirstEnergy Corp.*, No. 2:20-cv-3755, 2021 WL 1940234, at *2 (S.D. Ohio May 14, 2021) (quoting *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016)). Because of inadequate briefing on this matter and a lack of a showing of a "clearly defined and serious injury" to RSM, this Court will refrain from issuing a protective order at this juncture.[7] *Nix*, 11 F. App'x at 500 (citation omitted).

---

[7] RSM commingles its arguments in support of its request to squash the Subpoena and its request for a protective order. *See* Doc. 55, PageID 1209 ("[RSM] hereby moves under Fed. R. Civ. P. 45(d)(3) to quash the subpoena issued to it by Plaintiffs . . . and issue a protective order in favor of RSM . . . .").

But protective orders are generally governed by Rule 26(c) of the Federal Rules of Civil Procedure—not Rule 45(d)(3). *See, e.g.*, *Diamond Resorts Int'l, Inc. v. Phillips*, 3:17-cv-1124, 2018 WL 4328257, at *2 (M.D. Tenn. July 16, 2018) ("[W]here a party's standing may fall short to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective order . . . ."). The law on this issue is admittedly unclear in this Circuit, as parties oftentimes seek the quashing of a subpoena and, in the alternative, the issuance of a protective order. *See, e.g.*, *Roshon v. Eagle Rsch. Grp., Inc.*, No. 2:16-cv-968, 2017 WL 5256626 (S.D. Ohio Oct. 30, 2017) (ruling on a motion to quash a subpoena, or in the alternative, for a protective order); *Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-993, 2011 WL 3204723 (S.D. Ohio July 27, 2011) (same); *Forefront Machining Techs., Inc. v. SARIX SA*, No. 3:19-cv-383, 2021 WL 3615725 (S.D. Ohio Aug. 16, 2021) (same).

Under both analyses, courts are guided, at least in part, by the "undue burden" imposed on the party requesting the relief. *Compare* Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .") *with* Fed. R. Civ. P.

### i. Disclosure of Privileged or Other Protected Matter

When addressing motions to quash, "federal courts commonly place the burden on the party claiming the privilege of avoiding disclosure." *PCA-Corr., LLC v. Akron Healthcare LLC*, No. 1:20-cv-428, 2021 WL 2043118, at *5 (S.D. Ohio May 21, 2021); *see also State Farm Mut. Ins. Co. v. Policherla*, No. 08-13939, 2009 WL 2170183, at *3 (E.D. Mich. July 20, 2009) (same). In order to carry their burden, the party seeking to avoid disclosure must "show[] that the information falls into a protected category and that disclosure may be harmful, then the burden shifts to the requesting party to establish relevance and the need for the information." *See PCA-Corr.*, 2021 WL 2043118, at *5.

As is relevant here,[8] RSM asserts that it is "barred by law from producing the requested client tax information." Doc. 55, PageID 1213. 26 U.S.C. § 7216 makes it illegal for:

> [a]ny person who is engaged in the business of preparing, or providing services in connection with the preparation of, returns of the tax imposed by chapter 1,

---

45(d)(3)(A)(iv) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."). But as explained above, the analysis regarding protective orders is not simply one of "undue burden" under Fed. R. Civ. P. 45(d)(3) but one of whether the movant has shown "good cause" under Fed. R. Civ. P. 26(c). *See J&R Passmore, LLC v. Rice Drilling D, LLC*, No. 2:18-cv-1587, 2021 WL 4810150, at *4 (S.D. Ohio Oct. 15, 2021) ("Instead, the relevant consideration is whether Plaintiffs have demonstrated good cause for a protective order under Rule 26(c)(1) of the Federal Rules of Civil Procedure.").

Thus, while the Court is mindful of the undue burden that the Subpoena and Deposition impose on RSM and of the potential risks RSM faces in unauthorizedly disclosing its clients' tax information, to warrant a protective order, RSM must have specifically demonstrated "good cause." But RSM's Motion to Quash is otherwise silent on whether good cause exists to issue a protective order in order to prevent the deposition of an RSM corporate representative. *See Ogle v. Columbia Gas Transmission, LLC*, No. 2:10-cv-1059, 2014 WL 6814145, at *6 (S.D. Ohio Dec. 3, 2014) (holding that motions for "protective orders seeking to prevent the taking of a deposition [are] regarded unfavorably by the courts" and "should be rarely granted absent extraordinary circumstances") (cleaned up). RSM's Motion to Quash is silent on whether good cause exists to issue a protective order for the tax information that Plaintiffs seek. And RSM's reply in support of its Motion to Quash does not even mention the request for a protective order apart from the motion title. Faced with inadequate briefing on this matter, the Court must refrain from granting the request for a protective order for a lack of a showing of "good cause."

[8] Plaintiffs do not appear to dispute the applicability of this statute to RSM's Motion to Quash. Plaintiffs instead argue that the statute actually "permits the disclosure of tax information." Doc. 58, PageID 1763 (citing to 26 U.S.C. § 7216(b)(1)). As such, the Court sees no reason to question the relevance of this statute in conducting its analysis of RSM's Motion.

or any person who for compensation prepares any such return for any other person, and who knowingly or recklessly

> (1) discloses any information furnished to him for, or in connection with, the preparation of any such return, or

> (2) uses any such information for any purpose other than to prepare, or assist in preparing, any such return[.]

26 U.S.C. § 7216(a).

"But that general rule has exceptions, including when 'such disclosure is made . . . pursuant to an order of a court.'" *Kirby Devs. LLC v. XPO Glob. Forwarding, Inc.*, No. 2:18-CV-500, 2019 WL 5557531, at *2 (S.D. Ohio Oct. 29, 2019) (citing § 7216(b)(1)(B)). Guided by the *Cooper* rule, courts generally do not order the production of tax returns unless (1) "it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and" (2) "there is a *compelling need* therefor[e] because the information contained therein is not otherwise readily obtainable." *Cooper v. Hallgarten & Co.*, 34 F.R.D. 482, 484 (S.D.N.Y. 1964) (emphasis added); *see also Burket v. Hyman Lippitt, P.C.*, 2007 WL 2214302 at *2 (W.D. Mich. July 27, 2007) ("Tax returns are discoverable (1) where they are relevant to the action or the issues raised thereunder and (2) the material is otherwise not readily available.") (citing to *Cooper*, 34 F.R.D. at 484). As RSM has satisfied its burden to show that the information requested falls into a protected category and that disclosure may be harmful (in that disclosure may expose RSM to civil and/or criminal penalties), the burden now "shifts to [Plaintiffs] to establish relevance and the need for the information." *PCA-Corr.*, 2021 WL 2043118, at *5.

Here, even if the requested information was relevant, Plaintiffs have failed to demonstrate "a compelling need" sufficient to warrant the production of the protected

information specifically from RSM. Invoking 236 C.F.R. §301.6104,[9] Plaintiffs contend that the requested information is necessarily discoverable because the statute "requires a charitable entity such as the Maas Family Foundation and Ruah Woods to provide information when requested." Doc. 58, PageID 1766. But that statute is inapposite here. Plaintiffs are not seeking information directly from the tax-exempt organization itself but from the tax *preparer*. The statute is silent on that issue.

Furthermore, Plaintiffs have not provided a convincing reason for this Court to sanction the *extraordinary* course of action of issuing a subpoena for deposition testimony and the production of protected documents from a non-party to the case—especially where such information can be made available from Defendants themselves. *Cooper*, 34 F.R.D. at 484. It is "conceivably more convenient and less burdensome to obtain records from the source rather than the source's accountant who is not a party to the litigation." *PCA-Corr., LLC v. Akron Healthcare LLC*, No. 1:20-cv-428, 2021 WL 2043118, at *3 (S.D. Ohio May 21, 2021).

Plaintiffs' arguments as to why they seek such information from non-party RSM rather than Defendants themselves—that it is "dubious at best that Tony Maas will consent to testimony relating to these entities" and that "Tony has testified under oath that he is not a tax expert and [directed] . . . questions relating to JTM's tax returns . . . to RSM"—do not satisfy a showing of a "compelling need" for this information. Doc. 58, PageID 1766. Ultimately, Plaintiffs have not posited a sincere explanation as to why they have elected to "subpoena[]" such information "from a nonparty under Rule 45" and not through the "standard vehicle for obtaining documents belonging to a party [which] is Rule 34." *Johnson*

---

[9] It is the understanding of the Court that 236 C.F.R. §301.6104 does not exist. The Court notes that Plaintiffs likely intended to rely on 26 C.F.R § 301.6104(d)-(1)(a), which states that "a tax-exempt organization shall make its annual information returns (as defined in paragraph (b)(4) of this section) available for public inspection . . . ."

*v. ODRC*, No. 1:23-cv-39, 2023 WL 8457844, at *3 (S.D. Ohio Oct. 23, 2023) (quoting *PCA-Corr.*, 2021 WL 2043118, at *3). And Plaintiffs' position is all the weaker due to the status of RSM as a non-party to this case, which is a factor that weighs against disclosure of the information sought. *Vietnam Veterans*, 2011 WL 4714000, at *5.

Thus, the Court concludes that the Subpoena "requires the disclosure of privileged or other protected matter" and "no exception or waiver applies." Fed. R. Civ. P. 45(d)(3). The Subpoena must be quashed on that basis alone.

### ii. Undue Burden

Notwithstanding this Court's finding that Plaintiffs' request impermissibly "requires disclosure of privileged or other protected matter," this Court also holds that the Subpoena "subjects [RSM] to undue burden." Fed. R. Civ. P. 45(d)(3)(A). In making this assessment, the Court considers, among other factors, the "need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Am. Elec.*, 191 F.R.D. at 136.

Plaintiffs aver that the topics covered by the Subpoena "are relevant to this case" and cursorily assert that the Subpoena itself "does not create an undue burden on RSM." Doc. 58, PageID 1764, 1766. This Court disagrees. In assessing "the breadth of the document request, the time period covered by it, and the particularity with which the documents are described," the Court finds that the burden to RSM is far greater than that which Plaintiffs attempt to casually explain away. *Am. Elec.*, 191 F.R.D. at 136. The Subpoena requests a list of *all* "charitable contributions from JTM to various third parties for the years 2021 through 2024." Doc. 58, PageID 1764. Plaintiffs also request "information contained in the 2020 through 2023" tax returns of Pentecost Properties LLC, Ruah Woods, and the Maas Family

Foundation—despite none of these organizations being parties to the present case, and despite Plaintiffs' concession that the tax returns of the Maas Family Foundation "[are] public." *Id.* at PageID 1759.

As RSM argues, Plaintiffs' attempt to require it to produce "a list of the hundreds of [Defendants'] clients' charitable contributions to 'various third parties' for a multiyear period," its request for RSM to "explain how these many contributions affect calculations for shareholders," and its demand that RSM "prepare an officer to testify in detail to the same do not comply with Plaintiffs' obligation to 'take reasonable steps to avoid imposing undue burden or expense on a person . . . .'" Doc. 55, PageID 1216 (citing Fed. R. Civ. P. 45(d)(1)).

Plaintiffs respond by stating that they will present to RSM "[d]ocuments identifying those third parties . . . so any claim by RSM that gathering this information on these third parties as a part of JTM's charitable giving policy is burdensome is without merit." Doc. 58, PageID 1767. But Plaintiffs' argument misses the point. For an analysis of "undue burden" does not turn on whether the entities are readily identifiable but on, among other factors, "the breadth of the document request, the time period covered by it, and the particularity with which the documents are described." *Am. Elec.*, 191 F.R.D. at 136. Considering these factors, the Court finds that Plaintiffs' requests are not reasonably tailored in proportion to the needs of the case, are overly broad, and impose an undue burden on RSM.

17

### III.     CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Leave is **DENIED**. RSM's Motion to Quash is **GRANTED IN PART** and **DENIED IN PART**. RSM's Motion is **GRANTED** as it relates to the quashing the Subpoena, but its request for a protective order is **DENIED**.

**IT IS SO ORDERED.**

March 13, 2025

Jeffery P. Hopkins
United States District Judge